Marc J. Randazza, Esq., FL Bar #625566
mjr@randazza.com
Jason A. Fischer, FL Bar #68762
jaf@randazza.com
Randazza Legal Group
2 S. Biscayne Blvd., Suite 2600
Miami, FL 33131
(888) 667-1113
(305) 437-7662

Attorneys for Plaintiff,
Liberty Media Holdings, LLC

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC<br><br>Plaintiff,<br><br>vs.<br><br>SERGEJ LETYAGIN, d/b/a SUNPORNO.COM, IDEAL CONSULT, LTD., "ADVERT", "CASTA", "TRIKSTER", "WORKER", "LIKIS", "TESTER" and DOES 1-50<br><br>Defendants | Case No. 11-cv-62107-KMW<br><br>**MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER FOR SEIZURE AND APPOINTMENT OF RECEIVER, AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION** |

Immediately upon receiving word of this lawsuit, the Defendants began fraudulently transferring assets. Pursuant to 17 U.S.C. §§502, 15 U.S.C. §1116(d)(1)(A) and Fed. R. Civ. P. 65, Plaintiff moves this Court *ex parte* for a temporary restraining order to stop the Defendants' fraudulent transfers of assets. The Plaintiff seeks an Order unwinding the fraudulent transfers that have already occurred, freezing Defendants' accounts containing profits from the Defendants' illegal enterprise, and returning matters to the state they were in before the dissipation and fraudulent transfers began. Because of the serious and immediate nature of Defendants' acts, Plaintiffs request an emergency hearing or an expedited ruling on the papers.

## I.  STATEMENT OF FACTS

Defendants have engaged in copyright infringement of works produced by Plaintiffs and multiple other film producers.  See ECFs 1-4 through 1-9.  In fact the overwhelming majority of adult content on these Defendants' websites is stolen.  See Declaration of Peter Phinney at ¶ 14 (hereinafter "Phinney Dec.").  The assets Defendants hold (or held) in the United States are the domain name registrations for the website, other domain names, as well as profits from their illegal scheme.

Within days of commencement of this litigation, Defendants fraudulently transferred as many assets as they could out of the country and into the hands of third parties. It is clear that they did so to try and shield them from the consequences of this litigation.  Without the intervention of this Court, Defendants will continue fraudulent transfers of property and assets.  An Order from the Court could, at this point, unwind the fraudulent transfers.

Upon the commencement of this suit, the Defendants transferred the registration the SunPorno.com website, to an off-shore company in the Seychelles and transferred four other domains to online privacy services in the United Kingdom.  See Declaration of Erika Dillon ¶ 8 (hereinafter "Dillon Dec."), Exhibits A-2, C-3, E-2, F-2, and G-3.  They obviously did so because they believe that domain names obscured by foreign services and registered with foreign services are beyond the Court's equitable reach. See Dillon Dec. ¶ 21.

The registration information for SunPorno.com was changed on September 28, 2011.  The reason for this change is clear -- the Defendants are fully aware that the bell has begun to toll on their illegal enterprise.  Facing significant damages in this case, they immediately packed up everything they could transfer, in order to try and shield it from equitable relief that may be granted in this case.  This fraudulent transfer is an attempt to dissipate assets and to remove them

from the reach of this court. This Court cannot stamp its imprimatur upon such actions by allowing them to take place unchecked.

The events giving rise to this motion are not mere coincidence. The Plaintiffs filed a Complaint (ECF 1) on September 26, 2011. The Plaintiffs informed Moniker Privacy Services of the lawsuit on September 26, 2011. The changes in registration data for Defendants website took place on September 28, 2011. See Dillon Dec. ¶ 5-6, Exhibit A-2. After the initial movement of the SunPorno.com website, the other online piracy sites linked to on the top banner of the page were transferred as well. These websites (ah-me.com, twilightsex.com, ashemaletube.com, pornoxo.com and boyfriendtv.com) were all registered previously with Moniker Online Services in the name of Ideal Consult, Ltd. and all contain overwhelming levels of pirated content. See Dillon Dec. ¶ 9-18; Phinney Dec. ¶ 14. The Defendant moved all of these sites to a Canadian registrar, EvoPlus, Ltd., between September 28 and October 6, 2011. Dillon Dec. ¶ 10-18, Exhibits C-4, D-4, E-3, F-3, G-4. In the same time period, all but one of these websites changed their Whois registration information to WhoisProtectService, a privacy company located in the United Kingdom. Dillon Dec. ¶ 9-18, Exhibits A-2, C-3, E-2, F-2, and G-3. The one website not listing its information under this service is twilightsex.com, which continues to list Ideal Consult, Ltd., the same Seychellois company listed on the SunPorno.com page.

In other words, as soon as the Defendants became aware of the action, they immediately got to work fraudulently transferring and dissipating their assets so that they might place them out of this Court's reach of this Court's equitable powers.

There is no commercial reason for this immediate change of all of these websites, except to try to spirit these valuable assets out of reach of this Court in order to render any equitable

relief meaningless or impossible. See Dillon Dec. ¶ 21. They were registered with Moniker's services prior to these transfers – Moniker being a registrar located within this Judicial District. Dillon Dec. ¶ 8. It is proper to issue injunctive relief to unwind these fraudulent transfers and to preserve the court's ability to issue effective equitable relief. See *In re Estate of Ferdinand Marcos, Human Rights Litigation*, 25 F.3d 1467 (9th Cir. 1994) (proper to issue an injunction to keep assets from being dissipated overseas, especially where defendant had engaged in a pattern of such activity). Domain names are property and are properly the object of a seizure under a court's equitable powers just as much as the money that the SunPorno website takes in though its illegal enterprise. *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003); *Novak v. Benn,* 896 So. 2d 513 (Ala. App. 2004) (recognizing domain names as property that can be seized under a court order); *Palacio Del Mar Homeowners Assn., Inc. v. McMahon*, 174 Cal. App. 4th 1386, 1391 (Cal. App. Div. 2009); *Office Depot, Inc. v. Zuccarini*, 596 F.3d 696, 701-02 (9th Cir. 2010). This Court may freeze funds and exercise quasi *in rem* jurisdiction over the domain names to prevent their dissipation, disgorgement, or other changes thereto so that they may be subject to equitable actions such as shutting down the Defendant's websites if they are not purged of pirated content. See *Zuccarini*, 596 F.3d at 702-03 (VeriSign is located in the United States and subject to the court's jurisdiction; court was entitled to exercise quasi *in rem* control over the domain names). The Court can preserve these assets by putting them in the hands of a receiver during the pendency of this matter. As the Defendant has already shown that he will make fraudulent transfers, this move would be reasonable and proper.

The Defendants accept credit cards on their piracy websites, and thus American Express, Mastercard, and Visa can be ordered to cease clearing their funds, and to hold them in escrow or deposit them with the Court or a Court-appointed receiver until the outcome of this case is

determined.  Given the behavior of the Defendants thus far, it is eminently proper to issue injunctive relief, which would render these assets frozen in the United States until a judgment has been entered and all equitable relief satisfied.  *In re Estate of Ferdinand Marcos*, 25 F.3d 1467, 1480 (9th Cir. 1994).

The Plaintiffs request an emergency temporary restraining order, ordering the domain names held by the Defendant placed under the control of the registry of the Court or a Court-appointed receiver.  This relief is not extreme, as the Defendants will still be able to profit from the domain names, they will continue to use them as they have in the past (pending the outcome of trial or further motion practice), but they will be restrained from further fraudulent acts designed to frustrate equity and judgment.  Furthermore, Defendants accept funds from U.S. sources.  Given their actions to date, it is clear that they will dissipate their ill-gotten profits as well, if they have not done so already.  Therefore, a TRO restraining the Defendants (or anyone acting in conjunction with them) from removing funds from U.S. accounts is an appropriate remedy.  Given that the Plaintiff is entitled to the equitable remedy of receiving the Defendants' profits from copyright infringement under 17 U.S.C. § 504, this asset and property freeze is appropriate.  See *Levi Strauss & Co., v. Sunrise Int'l Trading*, 51 F. 3d 982, 987 (11th Cir. 1995); *FTC v. U.S. Oil and Gas Corp.,* 748 F. 2d. 1431, 1433-34 (11th Cir. 1984).

## II: PLAINTIFF SHOULD BE GRANTED AN EX PARTE TEMPORARY RESTRAINING ORDER

The purpose of the penalty provisions of the Copyright Act is to "discourage wrongful infringement as well as to compensate the copyright owner." *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1376 (5th Cir. 1981) (citing *F.W. Woolworth, Company v. Contemporary Arts, Inc.*, 344 U.S. 228, 233, 73 S.Ct. 222, 97 L.Ed.2d 276 (1952)).  Both purposes will be

frustrated if the Court fails to issue this order. "Copyright infringement must not be allowed to serve as the cornerstone of a profitable business." *Playboy Enterprises, Inc. v. Webbworld, Inc.*, 991 F. Supp. 543, 561 (N.D. Tex. 1997), *affirmed without opinion*, 168 F.3d 486 (5th Cir. 1999). If the Defendants can simply shift all of their assets and proceeds from copyright infringement over to offshore entities and offshore banks, in accounts held by shell corporations, they will most certainly enjoy a profitable business while the wheels of justice slowly grind. If all overseas intellectual property thieves must do is spirit their ill-gotten gains to coffers outside the reach of American courts, while they continue to reap the benefits of their theft, then what law could discourage this kind of activity?

Under the Copyright Act, the Plaintiff is entitled to, *inter alia*, the equitable relief of seizure of the Defendants' profits, 17 U.S.C. § 504; injunctive relief deemed reasonable to prevent or restrain infringement, 17 U.S.C. § 502. In this case, such equity will never be realized if the Defendants are permitted to move property and profits out of the United States and if they are permitted to continue earning money in the United States, from U.S. citizens, only to spirit the funds to offshore locations where this Court's equitable powers lack potency.

Courts routinely issue preliminary injunctions freezing defendants' assets in circumstances like this one. See, e.g., *Pashaian v. Eccelston Properties, Ltd.*, 88 F.3d 77, 86-87 (2d Cir. 1996); *Hendricks v. Bank of Am., N.A.*, 408 F.3d 1127, 1141 (9th Cir. 2005) ("district court did not abuse its discretion by concluding that the Hendricks would face a significant threat of irreparable injury if a preliminary injunction did not issue to prevent the Bank from honoring Mutual's draw"). They are further so issued when equity will be frustrated in the assurance of the order. *In re Estate of Ferdinand Marcos*, 25 F.3d 1467, 1480 (9th Cir. 1994).

A. The Legal Standard for the Requested Relief Has Been Met

A court may grant injunctive relief if the movant shows the following: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest). *Ferrellgas Ptnrs., L.P. v. Barrow*, 143 Fed. Appx. 180, 186 (11th Cir. 2006); *Int'l Cosmetics Exchange, Inc. v. Gapardis Health & Beauty, Inc.*, 303 F.3d 1242, 1246 (11th Cir. 2002)(quoting *Levi Strauss & Co*, 51 F.3d at 985); *Alliance For The Wild Rockies v. Cottrell*, 632 F.3d 1127 (9th Cir. 2011).

In light of the Defendants' conduct, this remedy is appropriate to ensure that the Defendants are not able to finish out their bad faith fraudulent transfer scheme. The Defendants have engaged in extreme conduct, involving hundreds of thousands of dollars in damages. If the Copyright Act is to mean anything, it should mean that such schemes do not provide a source of profit for the cyber criminals who engage in them. The Defendants see the writing on the wall: the Defendants infringed upon copyrighted works for profit and have been caught. The elements of copyright infringement have been shown, and no affirmative defenses are likely to prevail.

B. Plaintiff LMH Has A Substantial Likelihood of Prevailing on the Merits of Its Copyright Claims

To show a substantial likelihood of prevailing on the merits of a copyright infringement claim, Plaintiff Liberty must show that: (1) it owns the copyright to which its infringement claims relate; and, (2) Defendants violated one of the Plaintiff's exclusive rights in the works. See *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991); *Latimer v. Roaring Toyz, Inc.*, 601 F.3d 1224, 1232-33 (11th Cir. 2010); *Sid & Marty Kroft Television*

*Prods. Inc. v. McDonald's Corp.,* 562 F.2d 1157, 1162 (9th Cir 1977); *Educational Testing Servs. V. Katzman*, 793 F.2d 533, 538 (3d Cir. 1977).

The Certificates of Registration for the plaintiffs' works are of record in this case. ECF 1-13.  Section §410(c) of U.S. Code Title 17 specifies that the Certificate of Registration constitutes *prima facie* evidence of the validity and ownership of the copyrights.  Ownership is therefore established.

After establishing ownership, Plaintiffs must show unauthorized copying or distribution of its works.  17 U.S.C. § 106.  The evidence of unauthorized copying and distribution is clear and indisputable: The infringing works are exact digital copies of the Plaintiff's copyrighted materials.  See Dillon Dec. ¶ 23.  Plaintiffs did not authorize Defendants to make such copies or to distribute them.  ECF 6 ¶ 4.  Plaintiffs have therefore established a *prima facie* case of copyright infringement.  See *Feist Publ'ns, Inc.*, 499 U.S. at 361; *Latimer*, 601 F.3d at 1232-33; *Sid & Marty Krofft,* 562 F.2d at 1162; *Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.,* 797 F.2d 1222, 1231 (3d Cir. 1986); *Educational Testing,* 793 F.2d at 538.  Because of the incontrovertible evidence of Plaintiffs' copyright ownership and Defendant's unauthorized copying, Plaintiffs have shown a clear likelihood that they will prevail in their claims.

The extent of infringement that can be proven is extensive.  See Dillon Dec. ¶ 23.  While the Defendants have removed the videos listed in the Complaint, the Defendants continue to mount a campaign of infringement for profit through SunPorno.com and their affiliates.  The websites owned and operated by Mr. Letyagin are an online flea market of stolen works.  In fact, Letyagin is the subject of at least one other lawsuit pending in the N.D. Iowa.  See *Fraserside IP, LLC v. Letyagin*, 3:11-cv-03041-MWB (N.D. Iowa 2011).

**C.      Plaintiff Suffers Irreparable Harm**

Irreparable harm exists where in the absence of equitable relief, there is a substantial chance that upon final resolution, the movant cannot be made whole.  See *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir. 1999). "[A] district court has authority to issue a preliminary injunction where the plaintiffs can establish that money damages will be an inadequate remedy due to impending insolvency of the defendant or that defendant has engaged in a pattern of secreting or dissipating assets to avoid judgment." *Marcos*, 25 F.3d at 1480.  If a party is likely to take actions that will frustrate a judgment, then the movant's irreparable harm is shown.  See *Signal Capital Corp. v. Frank*, 895 F. Supp. 62, 64 (S.D.N.Y. 1995).  While monetary damages might be available at law in copyright cases, equity compels an impoundment of the instrumentalities of and the proceeds from infringing activities.  17 U.S.C. § 504.

The "financial impact of copyright infringement is hard to measure and often involves intangible qualities such as customer goodwill." *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1288-89 (10th Cir. 1996).  When irreparable economic damages are difficult to calculate, a finding of irreparable harm is appropriate.  See *Lakedreams v. Taylor*, 932 F.2d 1103, 1109 (5th Cir. 1991).  The language of 17 U.S.C. § 502 and § 504 combined with the presumed irreparable harm in copyright cases permits the Court to focus solely on the plaintiff's likelihood of prevailing at trial when fashioning preliminary injunctive relief.  See *Albert E. Price, Inc. v. Metzner, et al.*, 574 F. Supp. 281, 286 (E.D. Pa. 1983); *see also Educational Testing*, 793 F.2d at 544; *and see* 3 NIMMER ON COPYRIGHT at §14.06[A].

The Plaintiffs have demonstrated a substantial likelihood of prevailing on the merits of their claims and have established the element of irreparable harm.  See *Apple Computer, Inc. v.*

*Franklin Computer Corporation*, 714 F.2d 1240, 1254 (3d Cir. 1983); *see also Educational Testing*, *cited supra*, 793 F.2d at 543-544.  The Court should issue injunctive relief.

If the requested relief is not granted, Defendants will continue to move their illegal business instrumentalities and profits offshore, will transfer any funds in any U.S. accounts to foreign bank accounts, and they will continue to move funds they earn in the United States out of the United States, thus allowing the impact of this litigation to be nil, and frustrating any efforts to seize their illegal profits.

**D.     The Balance of Equities Favors the Issuance of the Requested Injunctive Relief**

The requested temporary restraining order is limited in scope.  It does nothing more than prohibit Defendants from fraudulent transfers and compels that they unwind those in which they have already engaged.  An injunction that simply restores thing to their rightful place is neither extreme nor controversial.

It is essential to freeze these domain names and any U.S. funds in order for Plaintiffs to receive any possible relief.  Additionally, the preliminary injunction sought restrains Defendants from making further unauthorized copies of Plaintiffs' works and distributing pirated materials. Injunctive relief seeks nothing more than requiring Defendants comply with the Copyright Act, to unwind fraudulent transfers and to preserve the *status quo* of Defendants' location of their ill-gotten gains.  The imposition on Defendants' legitimate business activities (if any) is minimal and short-lived.  The Plaintiffs' injury (continued infringement of Plaintiff's copyrights, and potential destruction of evidence) outweighs any possible damage caused to Defendants.

**E.     The Requested Relief is in the Public Interest**

The public has a genuine interest in upholding copyright protections. *See Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1066 (7th Cir. 1994) (quoting *Apple Computer, Inc. v.*

*Franklin Computer Corp.*, 714 F.2d 1240, 1255 (3d Cir. 1983) ("It is virtually axiomatic that the public interest can only be served by upholding copyright protections …")). Defendants' illegal infringements flout the public policy underlying federal copyright law. The copyright laws further the public's interest in protecting business investment, intellectual property, and enforcing federal law. See *Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1499 (10th Cir. 1993). See also 3 NIMMER ON COPYRIGHT, §14.06[A]; *Perfect 10, Inc. v. Cybernet Venutres, Inc.*, 213 F.Supp.2d 1146 (C.D. Ca. 2002). The public interest favors issuance of the requested relief.

Plaintiffs will succeed on their copyright and other claims. Clear, immediate, and irreparable harm is present. The balance of hardships weighs in favor of protecting the Plaintiffs' copyrights. The TRO will further the public interest in enforcing federal law and protecting copyrights from piracy, and keeping scofflaws from evading responsibility for their actions.

**F.     Ex Parte Relief is Essential**

Fed. R. Civ. Proc. 65 permits issuance of a temporary restraining order without prior notice to Defendants. By its very terms, Rule 65 allows for the issuance of an *ex parte* order.

> A temporary restraining order may be granted without written or oral notice to the adverse party or his attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting his claim that notice should not be required.

An *ex parte* order preserves the *status quo* and prevents irreparable harm. *See Granny Goose Foods, Inc., et al. v. Brotherhood of Teamsters*, 415 U.S. 423, 439 (1974). Courts grant a temporary restraining order when: (1) immediate and irreparable injury, loss, or damage will

result to the applicant before the adverse party can be heard in opposition; and, (2) the applicant sufficiently demonstrates the reason notice should not be required. Numerous courts recognized the need for *ex parte* temporary restraining orders in intellectual property cases. See *Vuitton v. White*, 945 F.2d 569 (3d Cir. 1991); see also *NBA Properties v. Various John Does*, 113 F.3d 1246 (10th Cir. 1997), *dec'n without published opinion, reported in full at* 1997 U.S. App. LEXIS 11946 (10th Cir. 1997); and see *American Can Company v. Mansukhani*, 742 F.2d 314, 321 (7th Cir. 1984) (holding Rule 65 "expressly contemplates the issuance of *ex parte* temporary restraining orders").

Regarding the issuance of temporary restraining orders, the Second Circuit Court of Appeals issued a writ of mandamus ordering the district court grant *ex parte* relief:

> The ex parte temporary restraining order is indispensable to the commencement of an action when it is the sole method of preserving a state of affairs in which the court can provide effective final relief. Immediate action is vital when imminent destruction of the disputed property, its removal beyond the confines of the state, or its sale to an innocent third party is threatened. In these situations, giving the defendant notice of the application for an injunction could result in an inability to provide any relief at all. *Id*. at 4, quoting *Developments In The Law – Injunctions*, 78 Harv. L. Rev. 994, 1060 (199965); see also *Fimab-Finanziaria MaglificioBiellese Fratelli Fila S.P.A. v. Kitchen*, 548 F. Supp. 2487, 249-250 (S.D. Fla. 1982) (recognizing the need for *ex parte* restraining orders in infringement cases and citing numerous unpublished orders granting such relief).

*Vuitton Et Fils S.A.,* 606 F.2d 1 (2d Cir. 1991). The Court further explained:

> [a]ssuming that all of the other requirements of Rule 65 are met, the rule by its very terms allows for the issuance of an *ex parte* temporary restraining order when (1) the failure to issue it would result in "immediate and irreparable injury, loss, or damage" and (2) the applicant sufficiently demonstrates the reason that notice "should not be required." In a trademark infringement case such as this, a substantial likelihood of confusion constitutes, in and of itself, irreparable injury sufficient to satisfy the requirements of Rule 65(b)(1) . . .

*Id.* at 3 (citations omitted.)

To obtain *ex parte* relief, a "Plaintiff need not show that a particular Defendant would not adhere to a temporary restraining order, but rather only that someone like the defendant would be likely to hide or destroy the evidence of his infringing activity." *Century Home Entertainment, Inc. v. Laser Beat, Inc.*, 859 F.Supp. 636, 638 (E.D.N.Y. 1994) (citing *In The Matter Of: Vuitton, cited supra*). In this case, U.S. based assets *are* being spirited offshore; Defendants have *already* engaged in fraudulent transfers. Dillon Dec. ¶ 6-18.

Plaintiffs have substantial equitable remedies awaiting them. 17 U.S.C. §§ 502-505. However, remedial and legal relief is unavailable if Defendants remove all property and funds subject to Plaintiff's recovery beyond the reach of the Court. Prior notice would "render fruitless further prosecution of the action." *Vuitton*, *cited supra*, 606 F.2d at 5.

Courts grant Rule 65(b) *ex parte* injunctive relief in two situations: (1) a showing that notice is impossible because plaintiff in unaware of the defendant's identity or location; or, (2) a showing that proceeding *ex parte* is the only method by which the court can fashion effective final relief. See *In The Matter Of: Vuitton*, 606 F.2d at 4. To justify *ex parte* proceedings under situation (2) above, the movant must show: (1) the adverse party historically disposes of evidence or violates court orders; **or**, (2) that persons similar to the adverse party have such a history. See *First Technology Safety Systems, Inc. v. Depinet*, 11 F.3d 641, 651 (6th Cir. 1998); *Vector Research v. Howard & Howard Attorneys, P.C.,* 1996 U.S. App. LEXIS 7492 (6th Cir. 1996).

When giving notice to the defendants will result in the dumping of goods or other nefarious deeds, it is appropriate to issue *ex parte* orders without notice. *Fimab-Finanziaria Maglificio Biellese Fratelli Fila S.p.A. v. Kitchen*, 548 F.Supp. 248, 249 (S.D. Fla. 1982); *see also Vuitton,* 606 F.2d at 2-3. *Ex parte* relief is sometimes the only effective tool for combating

intellectual property theft when the defendants are overseas acting dishonestly. See, e.g. *Reebok International, Inc. v. Marnatech Enterterprises, Inc.,* 970 F.2d 522 (9th Cir. 1992); *Vuitton v. White*, F.2d 569, 571-72 (3d Cir. 1991). That is exactly what is happening here. Plaintiffs are entitled to issuance of an *ex parte* temporary restraining order. It is the only method of preserving the status quo because defendants have already taken affirmative steps to move assets beyond the court's reach in order to frustrate any order the court may issue.

A TRO is appropriate. Defendants' willful infringements and fraudulent transfers of assets make it critical that the Court order seizure before Defendants completely dissipate their funds and completely transfer their assets. Additionally, where danger of destruction or hiding evidence exists, the federal rules permit issuance of *ex parte* seizure and impoundment orders, and this is the kind of situation that the rule was intended to address. *See Universal City Studios, Inc. v. Ronnie Lorizzo*, 9:03-CV-5182(SJ) (E.D.N.Y. Nov. 17, 1993); *see also The Walt Disney Company, v. Jim Garofalo*, 9:02-CV-5314 (E.D.N.Y. Nov. 12, 1992).

### III. PLAINTIFF WILL PROVIDE ADEQUATE SECURITY IF HARDSHIP IS PROVEN

In the event that the Defendants **prove hardship**, they may propose a bond. However, they bear the burden of <u>proving</u> hardship. See *Connecticut General Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d. 878, 882 (9th Cir. 2003) (in an asset freeze injunction, "the bond amount may be zero if there is no evidence the party will suffer damages from the injunction"). The likelihood of harm to the Defendants is nil. The only thing that a failure to grant the requested relief would do would be to allow the Defendants to continue their illegal enterprise and to continue to move to frustrate any order this Court may issue. The entry of the requested injunctive relief would be no different than an injunction against a thief commanding him to stop

fencing his stolen goods. A bond is neither necessary, nor proper. However, if the Court is inclined to entertain a request for a bond, then it should hold an evidentiary hearing at which the Defendants should be required to meet their evidentiary burden to prove hardship. A mere request for one, without sworn testimony specifically articulating the alleged harm and an opportunity to cross-examine witnesses, should not be entertained.

### IV. DEFENDANTS SHOULD BE ORDERED TO SHOW CAUSE REGARDING THE ISSUANCE OF A PRELIMINARY INJUNCTION

The standard for issuance of preliminary injunction is equal to the standard for issuance of a temporary restraining order. See *Speaks v. Kruse*, 445 F.3d 396, 399-400 (5th Cir. 2006). Plaintiffs have overcome the burden to meet these standards. This Court should issue a show-cause order requiring Defendants demonstrate any countervailing argument the Court should not issue a preliminary injunction continuing the relief granted in the temporary restraining order.

### V. THE COURT SHOULD APPOINT A RECEIVER TO TAKE POSSESSION OF THE DEFENDANTS' ASSETS

The only way to ensure that assets are available to Plaintiffs for recovery on their judgment and to ensure that the Defendants' profits, which equity will give to the Plaintiffs, is to appoint a receiver and order Defendants to turn over control of their websites to the receiver. Their businesses can then function just as they do now, but they will not be able to resist collection on the value of their domains at the close of litigation.

The appointment of a receiver by a federal court is governed by federal law and federal equitable principles. *Nat'l P'ship Inv. Corp. v. Nat'l Hous. Dev. Corp.*, 153 F.3d 1289, 1292 (11th Cir. 1998); *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314, 316-17 (8th Cir. 1993). Rule 66 of the Federal Rules of Civil Procedure specifically provides that an action in which the appointment of a receiver is sought is governed by the federal rules.

Appointment of a receiver is an equitable remedy. *Aviation Supply Corp.*, 999 F.2d at 316. Although no precise formula for determining when a receiver may be appointed exists, court typically consider several factors: 1) whether fraudulent activity has or will occur, 2) the validity of the claim, 3) the danger that property will be lost or diminished in value, 4) inadequacy of legal remedy, 5) availability of less severe equitable remedy, and 6) the probability that a receiver may do more harm than good. *Id.* at 316-17 (willful nondisclosure and false disclosure to avoid a judgment credit supported appointment of a receiver); *Bookout v. Atlans Fin. Corp.*, 395 F. Supp. 1338, 1342 (N.D. Ga. 1974) (during action to enforce note and security agreement, financial manipulations raise sufficient evidence of fraud to warrant appointment of receiver), *aff'd* 514 F.2d 757 (5th Cir. 1975); *Sec. & Exch. Comm'n v. Kirkland*, Case No. 2011 WL 3119395 6:06-cv-183-Orl-28KRS (Doc. No. 10) (M.D. Fla. 2007); *Motion Dynamics, Inc. v. Nu-Best Franchising, Inc.*, 2006 WL 1050639 (M.D. Fla. 2006) ("Plaintiff has demonstrated … that Defendants have likely engaged in conduct that, without the appointment of a receiver, will post a substantial thread that the property at issue will be lost, squandered or significantly diminished in value.") Consideration of these factors in the instant matter, particularly in light of Defendant's fraudulent transfers, supports the appointment of a receiver.

Liberty recommends Darren Spielman of Fort Lauderdale, Florida for appointment as receiver of the domain names at issue until the completion of this case. Mr. Spielman is a Florida-based intellectual property attorney. He received a Bachelor of Science in Public Relations, a Masters in Mass Communications and his Juris Doctor from the University of Florida. Mr. Spielman has served on the University of Florida Honor Court and as that court's Attorney General. He is admitted to practice before this court, the Northern District of Florida and the Eleventh Circuit Court of Appeals.

The undersigned counsel for Liberty interviewed Mr. Spielman and believes that the interest of the court would best be served by Mr. Spielman being appointed. Because of his residence in Florida and his familiarity with the technologies at issue, Mr. Spielman possesses the time and experience necessary to oversee the domain names within the United States. For his work, Mr. Spielman will bill at the rate of $275 per hour, plus expenses, which is consistent with his rate for consulting as an intellectual property attorney. His fees and expenses would be submitted to the Court for approval and, following approval, be paid by the proceeds of the sale of Defendants' assets, if necessary.

It is anticipated that Mr. Spielman will oversee transfer of the domain names back to United States registrars and will maintain the websites until the close of this case.

## VI.  CONCLUSION

Defendants illegally distributed copies of the Plaintiffs copyrighted materials for profit. Defendants' conduct is patently indefensible. It immediately and irreparably harms Plaintiffs. The Court should grant Plaintiffs' motions for a temporary restraining order, order for seizure, order for expedited discovery, and order to show cause. The Court should grant these requests *ex parte* and without advance notice to Defendants to preserve the *status quo* and permit the Court to fashion effective relief at trial.

Dated: December 9, 2011

Respectfully Submitted,
Randazza Legal Group
2 S. Biscayne Blvd., Suite 2600
Miami, FL 33131
Telephone: (888) 667-1113
Facsimile: (305) 437-7662

   *s/Marc J. Randazza*

Marc J. Randazza, Esq., (625566)
mjr@randazza.com
Jason A. Fischer, (68762)
jaf@randazza.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing documents were filed electronically using this court's CM/ECF system on Decmeber 9, 2011, and are thereby served upon Mr. Mark Terry, Mr. Valentin Gurvits and Mr. Evan Fray-Witzer. As the identity of the remaining Defendants has yet to be determined, they cannot be served.

    *s/Jason A. Fischer*
Jason A Fischer (68762)
Randazza Legal Group
2 S. Biscayne Blvd., Suite 2600
Miami, FL 33131
Telephone: (888) 667-1113
Facsimile: (305) 437-7662 fax
jaf@randazza.com