IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| LIBERTY MEDIA HOLDINGS, LLC,<br><br>                         Plaintiff,<br><br>  vs.<br><br>SERGEJ LETYAGIN, d/b/a SUNPORNO.COM, IDEAL CONSULT, LTD., "ADVERT," "CASTA," "TRIKSTER," "WORKER," "LIKIS," "TESTER" and DOES 1-50,<br><br>                         Defendants. | CASE NO. 0:11-CV-62107-KMW |

**OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER, ORDER FOR SEIZURE AND APPOINTMENT OF RECEIVER, AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

*"Sentence first – verdict afterwards."*
-- Lewis Carroll, *Alice's Adventures in Wonderland*, Chapter 12

*Two months ago*, the Plaintiff – already aware that Defendant Ideal Consult, Ltd. ("Ideal") had transferred certain domain names in their possession from one Internet Registrar to another – wrote to predecessor counsel to express its belief that these transfers were somehow improper. *See* Exhibit 1. The Plaintiff then waited two months to file (late on a Friday afternoon) a so-called "emergency" motion seeking drastic and unwarranted ex-parte relief. Shockingly, the Plaintiff bases its motion for such relief on (1) the speculation of its own paralegal as to *Ideal's* motivation in making the transfers, and (2) a self-proclaimed "expert" whose opinions appear to be based on his assertion that he's seen enough pornography to be able to recognize the good stuff.

Moreover, the Plaintiff appears to be set on transforming this Court into a modern day Star Chamber: ignoring the service requirements of the Hague Convention, attempting to assert personal jurisdiction over defendants with no connection to the present forum, filing its motions

"under seal" and "ex parte" so as to avoid the adversarial process, and utilizing unauthorized extrajudicial self-help as a means to improperly place pressure on the defendants.[1]  The present "emergency" motion is but the latest example of the Plaintiff's contempt for the rules of this Court.  Because the Plaintiffs cannot meet any of the requirements necessary to obtain the drastic relief sought, its motion should be denied in its entirety.

## FACTS

Ideal Consult, Ltd. is a company headquartered in Seychelles.  *See* Affidavit of Sergej Letyagin, attached hereto as Exhibit 3.  Ideal owns and operates thousands of different websites, primarily offering adult entertainment.  *Id*.  Ideal does not maintain (and has never maintained) any servers within Florida, has no employees in (and has never had any in) Florida, does not advertise in (and has never advertised in) Florida, owns no real estate in (and has never owned any real estate in) Florida, pays no taxes in (and has never paid taxes in) Florida, and has no bank accounts in (and has never had any bank accounts in) Florida.  *Id*.  Neither Ideal nor Sunporno.com is registered to do business in Florida (despite the naked allegation in the complaint to the contrary).  *Id*.[2]

Sergej Letyagin ("Mr. Letyagin") is an individual residing in Europe and the Director of Technology for Ideal.  *Id*.  He does not now, nor has he ever, individually owned Sunporno.com or any of the other websites mentioned in Plaintiff's complaint.  *Id*.  He has no connections with Florida at all and, indeed, he has never even visited the United States.  *Id*.

Neither Ideal nor Mr. Letyagin have been served with the Complaint in this case and the defendants are unaware of service having been attempted under the Hague Convention with

---

[1] Without the approval of this Court, the Plaintiff contacted Moniker.com and had them place a "legal lock" on the domain Sunporno.com, based on nothing more than unproven allegations.  This seizure of Ideal's property was accomplished without any due process whatsoever.  *See* Exhibit 2.

[2] A search of the Florida Secretary of State's website confirms that neither entity is registered to do business in Florida.

respect to either.  *Id.*

In July of 2011, Ideal first obtained the already-existing website, SunPorno.com, along with a number of others.  In August of 2011, in reviewing business costs, Ideal decided that it could obtain domain registration and privacy services at a lower cost than it was receiving from Moniker (the registrar which had been selected by Sunporno.com's former owners).[3]  *Id.*  As a result, Ideal decided to experiment with another registrar, Evonames.  *Id.*  Evonames offered prices for registration and privacy services which would reduce Ideal's costs for these services by more than twenty percent.  *Id.*  <u>Accordingly, on September 5, 2011, a full three weeks before this litigation was even filed, Ideal initiated the transfer of 117 of its domains away from Moniker.</u>  *Id.  See also, Confirmation of Transfer Request, attached as Exhibit 5.*  This transfer was intended to be a test of Evonames' services: it was always intended that, if Ideal was happy with the results of this test, it would transfer in phases the remainder of its domain names to Evonames.  *Id.*  Accordingly, on September 28, 2011, Ideal initiated the transfer of an additional 1,033 domain names away from Moniker. *See Second Confirmation of Transfer request, attached as Exhibit 6.*  At the time this transfer was made, Ideal was unaware that the present lawsuit had been filed.  *Id.*  Ideal first learned of the present lawsuit on September 29, 2011, when it was directed to a news report of the initiation of litigation.  *Id.*

Also on September 28, 2011, without prior approval from this Court (and apparently knowing that it could not make the showing required to properly obtain an injunction), the Plaintiff wrote directly to Moniker and based on nothing more than the *allegations* contained in

---

[3] Registrars are entities accredited by ICANN to provide internet registration services.  Registration of a domain name through a registrar does nothing more than ensure that, when a person types a domain name into a web browser, the person is directed to the proper location where the website's files are stored.  *See*, *e.g.*, Exhibit 4.  The assignment of a domain name might be considered analogous to the assignment of a telephone number.  And, as with a telephone number, the change of carriers (for example, from Sprint to Verizon) has no effect on the ownership of the phone number in question.

3

its complaint, persuaded Moniker to place a "legal lock" on the Sunporno.com domain. *See* Exhibit 2. Ideal did not learn of this lock until it attempted to transfer the domain to another registrar as part of the mass transfers already underway. *See, Affidavit of Sergej Letyagin.*

On October 11, 2011 – two months before it filed the present "emergency" motion, the Plaintiff wrote to predecessor counsel indicating that the Plaintiff was aware that Ideal had transferred domain names from one registrar to another. *See Exhibit 1.*

The transfers to a new registrar have had no effect on Ideal's *ownership* of any domain name. *Letyagin Affidavit.* Ideal continues to own today each domain which it owned at the initiation of the present litigation. *Id.* Contrary to the Plaintiff's claims,[4] Ideal's websites do not accept credit cards, nor has Ideal set up any credit card accounts with Visa, Mastercard, or American Express to accept payments. *Id.*

## ARGUMENT

### I. Standard for Injunction

A preliminary injunction[5] is "an extraordinary and drastic remedy that should be granted only if the moving party has clearly established four elements: (1) substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998). "Courts in this Circuit will not issue a preliminary injunction where the moving party fails to meet its burden of proof on each of the four factors. *Tally-Ho, Inc. v. Coast Community College Dist.,* 889 F.2d 1018,

---

[4] The Plaintiff's Motion demonstrates an interesting understanding of what it means to present the Court with a "Facts" section. Plaintiffs' so-called "facts" include unsupported speculation, argument, assertions made "on information and belief," and Herculean leaps of logic which are belied by the actual facts of the case.

[5] It goes without saying that the requirements for a temporary restraining order – particularly one sought on an emergency basis – are even higher.

4

1022 (11th Cir. 1989); *see also Salsbury Lab., Inc. v. Merieux Lab., Inc.,* 908 F.2d 706, 708 n.2 (11th Cir. 1990) (preliminary injunction denied because movant failed to show threat of irreparable harm although it established a substantial likelihood of success on the merits)." *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.,* 188 F. Supp. 2d 1350, 1357-1358 (S.D. Fla. 2001). "Because a preliminary injunction is an extraordinary and drastic remedy, its grant is the exception rather than the rule, and plaintiff must clearly carry the burden of persuasion." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

## II. The Plaintiff Has Not Shown A Likelihood Of Success On The Merits.

The Plaintiff has, quite clearly, placed its cart before its horse. Before the Plaintiff can properly get to the question of infringement (which the Defendants deny),[6] it must first get past the significant hurdle of establishing both personal and subject matter jurisdiction.[7] According to the Complaint, the Plaintiff, Liberty Media Holdings, LLC ("LMH"), is a California limited liability company... with a principal place of business in Las Vegas, Nevada." Complaint, ¶6. Mr. Letyagin is a European resident and Ideal is a Seychelles company. There is, however, no connection between the present litigation and the State of Florida. None of the parties are located here, none of the alleged wrongful acts took place here, and none of the alleged harm took place here. The *only* connection to the present forum is that the registrar who registered the

---

[6] Ideal's substantive defenses are varied and complex and would require a greater factual record than the one available at this time. Accordingly, for the purposes of the present opposition, the defendants focus instead on the Plaintiff's inability to succeed on the merits of its claims because of the lack of personal and subject matter jurisdiction – deficiencies which are much more evident and easily argued on short notice.

[7] In truth, the Plaintiff must first get past the hurdle of serving the defendants under the Hague Convention. Admittedly, this is a hurdle that the Plaintiff could clear if it bothered to make the effort to do so. Instead, though, the Plaintiff seems to be operating under the belief that it need not comply with those rules that it finds burdensome (hence the present "emergency" motion). It is inappropriate for the Plaintiff to bring a motion for injunctive relief against defendants who have not been properly served. *See, e.g., Gibbs v. United States*, 2011 U.S. Dist. LEXIS 24897 (M.D. Fla. 2011). *See also Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 470-71 (5th Cir 1985) (a "district court has no power to grant an interlocutory or final injunction against a party over whom it has not acquired valid jurisdiction"). A court must have both subject matter jurisdiction and "in personam jurisdiction over the party against whom the injunction runs." When that party is the defendant, this "implies either voluntary appearance by him or effective service of process." Id. Where, as here, neither party has been properly served with process an injunction cannot issue. Id.

Sunporno.com domain has an address in Florida. Indeed, as the Plaintiff is well aware, the address listed on Sunporno.com's Whois registry information is not its own – but rather that of Moniker.com, which provided Sunporno.com's privacy services. *See* Exhibit 7.[8] This would be akin to basing personal jurisdiction against a defendant in New York simply because the person owns a telephone and Verizon's corporate headquarters are located in New York. Moreover, because none of the acts complained of took place in Florida, none of the parties are located in Florida, and none of the alleged harm occurred in Florida, there is no subject matter jurisdiction in this District.

Indeed, given the wholesale lack of allegations of wrongful conduct which took place either in Florida or the United States, it appears that the Plaintiff has no viable claim of copyright infringement at all. It is well established that "United States copyright laws do not have extraterritorial effect." *National Enquirer, Inc. v. News Group News, Ltd.,* 670 F. Supp. 962, 970 (S.D. Fla. 1987). *See also Palmer v. Braun,* 376 F.3d 1254, 1258 (11th Cir. 2004)("federal copyright law has no extraterritorial effect, and cannot be invoked to secure relief for acts of infringement occurring outside the United States. ...Thus, it is only where an infringing act occurs in the United States that the infringement is actionable under the federal Copyright Act, giving the federal courts jurisdiction over the action"); *Foreign Imported Prods. & Publ., Inc. v. Grupo Indus. Hotelero, S.A.,* 2008 U.S. Dist. LEXIS 108705 (S.D. Fla. 2008)("Federal copyright law has no extraterritorial effect, and therefore it is only where an infringing act occurs in the

---

[8] *See also Dlorah, Inc. v. Nau Holdings, LLC*, 2009 U.S. Dist. LEXIS 34240 (D.S.D. Apr. 23, 2009)("Unfortunately for plaintiff, WHOIS records merely provide contact information for the administrator or registrant of a domain name, and have no bearing on ownership"); *Nordica S.p.A. v. Icon Health & Fitness, Inc.*, 2009 DNH 118 (D.N.H. 2009)("WHOIS reports are not sufficient to establish ownership, as courts have recognized that such reports 'merely provide contact information for the administrator or registrant of a domain name, and have no bearing on ownership'"); *Express Media Group, LLC v. Express Corp.,* 2007 U.S. Dist. LEXIS 34800 (N.D. Cal. 2007)("Defendants' arguments rest on changes to the WHOIS records and the registration contact information for the domain name. Such records, however, are not the equivalent of statutorily-created title systems. They are privately-maintained systems for providing contact information and keeping records for domain names").

United States that the infringement is actionable under the federal Copyright Act, giving the federal courts jurisdiction over the action. ...Stated another way, district courts do not have subject matter jurisdiction over infringing acts that took place wholly outside the United States or entirely overseas"); *Subafilms, Ltd. v. MGM-Pathe Communications Co.*, 24 F.3d 1088, 1094 (9th Cir. Cal. 1994)("Because the copyright laws do not apply extraterritorially, each of the rights conferred under the five section 106 categories must be read as extending no farther than the [United States'] borders.")

Because the Complaint fails to allege any violations of Copyright Laws taking place within Florida or the United States, this Court does not have subject matter jurisdiction over the Plaintiff's claims and, as such, there is no likelihood of success on the merits.

Even if there was subject matter jurisdiction over the Plaintiff's claims, there is no question but that there is no personal jurisdiction over either Ideal or Mr. Letyagin.

In Florida, the examination of the question of personal jurisdiction over a non-resident defendant is a two-step process. First, the Court must decide if the exercise of jurisdiction is authorized by Florida's long-arm statute, §48.193. And, if the Plaintiff meets this first test, the Court must also decide if an exercise of personal jurisdiction comports with the constitutional requirements of due process. In the present case, the Plaintiff cannot meet either test (and, in truth, hasn't even really tried).

Although the complaint makes no mention of Florida's long arm statute, much less which subsection the Plaintiff contends might apply, a liberal reading of the complaint might suggest that the Plaintiff hopes to base its claim of jurisdiction under subsection (1)(a), which would require the defendants to be conducting business within Florida. In support of this, the Plaintiff has pointed only to the fact that some of Ideal's websites were registered by Moniker.com, which

has offices in Florida and does business globally. There is no allegation that either Ideal or Mr. Letyagin have had any contact with Florida whatsoever. This is hardly "doing business in Florida." *See, e.g., Verizon Trademark Services, LLC v. The Producers, Inc.*, 2011 U.S. Dist. LEXIS 95400 (M.D. Fla. 2011)(holding that the plaintiff had failed to prove that the defendant was doing business in Florida, despite operating a domain registration service that provided registration services to Florida residents.)

Even if the Plaintiff could somehow bring Ideal's conduct within Florida's long-arm statute, there can be no reasonable argument that an exercise of jurisdiction over either Ideal or Mr. Letyagin even remotely complies with the requirements of due process. *See, e.g., Verizon Trademark Services, LLC, supra* (holding that the operation of a website – even an interactive one – was an insufficient basis on its own to assert jurisdiction); *Roblor Marketing Group, Inc. v. GPS Industries, Inc.*, 645 F. Supp. 2d 1130 (S.D. Fla. 2009)(rejecting personal jurisdiction over the defendant, despite the defendant's operation of an interactive website accessible in Florida, because "traditional notions of due process" precluded an exercise of jurisdiction where the defendant "could not have foreseen being haled in Florida. [The defendant] is not licensed to do business in Florida and has no income from direct Florida sales. [The defendant] has no agents, resellers, and distributors, nor any presence whatsoever in Florida. [The defendant] has never targeted Florida residents through an advertising campaign. There is no evidence that [the defendant] holds any bank account or has any investments in Florida..."); *Zamora Radio, LLC v. Last.FM, Ltd.*, 2011 U.S. Dist. LEXIS 69101 (S.D. Fla. 2011)(rejecting jurisdiction over foreign defendants who operate a highly interactive website because none of the activities were specifically aimed at Florida, as opposed to users of the internet world-wide); *Instabook Corporation v. Instantpublisher.com*, 469 F. Supp. 2d 1120 (M.D. Fla. 2006).

Because there is neither subject matter jurisdiction over the Plaintiff's claims, nor personal jurisdiction as to either Ideal or Mr. Letyagin, the Plaintiff has no likelihood of success on the merits of its claims.[9]  Because the Plaintiff has not – and cannot – prove a likelihood of success on the merits – its motion for injunctive relief must be denied in its entirety.  *See, e.g., BR-111 Imports & Exports, Inc. v. Indusparquet Industria E Commercio De Madeiras, LTDA*, 2010 U.S. Dist. LEXIS 113272 (S.D. Fla. 2010)("if the movant is unable to establish a likelihood of success on the merits, a court need not consider the remaining conditions prerequisite to injunctive relief.")

### III.  The Plaintiff Has Not – And Cannot – Show A Risk Of Irreparable Harm.

Irreparable harm is the "*sine qua non* of injunction relief."  *BR-111 Imports & Exports, Inc., supra, at 23.*  "Without a finding of a likelihood of an 'actual and imminent' irreparable injury, preliminary injunctive relief is improper."  *Id.*  "To demonstrate irreparable injury, 'a movant must show that it will suffer an injury that cannot be adequately compensated if, at some later point in time, it prevails on the merits of the case.'"  *Id. a*t 24, *quoting Glen Rayen Mills, Inc. v. Ramada Intern., Inc.*, 852 F. Supp. 1544, 1547 (M.D. Fla. 1994).  "Moreover, if any injury can be undone through monetary remedies, it is not irreparable."  *Id.  75 Retail Enters. v. Farmer*, 2006 U.S. Dist. LEXIS 23143 (M.D. Fla. 2006)("To demonstrate irreparable harm, a plaintiff must show that it has no adequate remedy at law, meaning that its injury cannot be undone through monetary remedies"); *Council v. Dep't of Veterans Affairs*, 2009 U.S. Dist. LEXIS 122165 (M.D. Fla. 2009)("In order to establish an irreparable harm or injury, a party must show that remedies at law, such as monetary damages, are inadequate to compensate for that injury.")

---

[9] Assuming that service of process is effectuated on either Ideal or Mr. Letyagin, a motion to dismiss will be filed more fully analyzing the jurisdictional (and other) shortcomings of the Complaint.

Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm. ...The mere possibility that plaintiff may never collect on its judgment does not make out irreparable harm." *Id.* at 24-25.  *See also Int'l Schs. Servs. v. AAUG Ins. Co.*, 2010 U.S. Dist. LEXIS 126549 (S.D. Fla. 2010).

"Preliminary injunctive relief derives from the necessity to restrain or compel conduct in those extraordinary situations where irreparable injury might result from delay or inaction." *Alabama v. United States Army Corps of Engineers*, 424 F.3d 1117 (11th Cir. 2005). Particularly in intellectual property cases, "a plaintiff's delay in seeking an injunction ...tends to neutralize any presumption that infringement alone will cause irreparable harm pending trial, and such delay alone may justify denial of a preliminary injunction..." *Seiko Kabushiki Kaisha v. Swiss Watch Int'l, Inc.*, 188 F. Supp. 2d 1350, 1355-1356 (D. Fla. 2002).

In the present case, the Plaintiff cannot hope to demonstrate irreparable harm both because any harm which it may have suffered will be fully compensable by monetary damages and because the plaintiff's own delay (two months from the date on which it notified the defendants that it was aware of the transfers), vitiates its claim of irreparable harm.[10]  Indeed, in its own motion, the Plaintiff provides a full calculation of the monetary damages to which it believes it will be entitled if it prevails in the present action.  This alone demonstrates a lack of irreparable harm.  The Plaintiff's claim that it is somehow harmed by Ideal's change of registrars is spurious – the change of registrar is not a change of ownership.  Ideal continues to own today that which it owned prior to the change in registrars.

---

[10] It is telling that the Plaintiff did *not* seek an order requiring the defendants to remove from their site any allegedly infringing materials.  This is true because – as the Plaintiff concedes – those materials were already removed by Ideal.

10

Because the Plaintiff has failed utterly in demonstrating that it will suffer irreparable harm if the injunctive relief sought is not granted, it's motion must be denied in its entirety.

## IV. The Risk of Irreparable Injury to Ideal Is Great.

One need only articulate the relief sought by LMH to understand the potential injury to understand the risk of injury to Ideal: LMH asks this Court to appoint a receiver to take control of the assets of a foreign corporation, over which it has no jurisdiction, and to – against Ideal's own business judgment – force Ideal to utilize a registrar of LMH's choosing, to be overseen by a lawyer of LMH's choosing.[11] Such an intrusion into the corporate operations and governance of a foreign corporation would be almost unprecedented.[12]

Even if Ideal were not a foreign corporation, such a request for receivership would be impermissible under federal law, which generally permits the appointment of a receiver actions only *after* a final judgment has been rendered. *Piambino v. Bailey*, 757 F.2d 1112, 1131-1132 (11th Cir. 1985)("... Lead Counsel attempted, once again, to freeze Bestline's assets in the hope that there would be funds available to satisfy their clients' claims, to pay an attorney's fee and to reimburse them for the litigation expenses they had advanced, which were mounting. On March 23, 1976, they moved the court below to place in receivership Bestline and its two founding principals, Bailey and Brassfield. Their chances of prevailing on such a motion were, they no doubt knew, very slim, since precedent of long standing was squarely against them. This precedent holds that the receivership remedy they sought is available only to plaintiffs with an equitable interest in the property to be seized or with judgments that cannot otherwise be

---

[11] Not incidentally, the website of the lawyer proposed by LMH to act as receiver is www.DefendMyDomain.com. This attorney could hardly be said to be acting as an impartial outsider.

[12] The Plaintiff's other requested relief – the attachment of funds in the hands of Visa, Mastercard, and American Express – is both improper and moot. Even if Ideal maintained such accounts, LMH would have had to first name those entities as trustee process defendants, which it has not done. Moreover, the request is moot since Ideal does not accept credit card payments through any of those entities. Even if the request were not moot, it should be denied as LMH has failed to meet any of the other requirements to obtain injunctive relief.

satisfied.  Such a receivership is not available to plaintiffs, such as those Lead Counsel were representing, who are merely prosecuting a tort action for the recovery of unliquidated money damages and have not reduced their claims to judgment"); *Warshall v. Price*, 617 So. 2d 751, 752 (Fla. Dist. Ct. App. 4th Dist. 1993)("Before any trial has been held and any final judgment entered, a motion for the appointment of a receiver of the property of the defendant is a drastic matter constituting a taking of property and requires a showing of exigent circumstances"); *Gordon v. Washington*, 295 U.S. 30, 38 (U.S. 1935)("a federal court of equity will not appoint a receiver where the appointment is not ancillary to some form of final relief which is appropriate for equity to give.")

In the present case, the Plaintiff asks the Court to follow it down the rabbit hole to Wonderland, where "sentence first – verdict last" is permissible.  Unfortunately for the Plaintiff, however, it chose to file in the Federal Courts of the United States, not in the Court of the Queen of Hearts.  In the present case, not only is there no final judgment, there has not even been proper service of the complaint.  Nor are there any exigent circumstances that might warrant such draconian relief (if such relief were even permissible).  Ideal has today the same assets that it had when the present litigation was filed.  As such, the Plaintiff's claims of "fraudulent transfer" are baseless.

Because the balance of harms clearly favors the defendants, the Plaintiff's motion for injunctive relief must be denied.

### V.    The Proposed Injunctive Relief Would Be Adverse to the Public Interest.

In the present case, the Plaintiff is asking for drastic and draconian relief against defendants who have not been properly served, over whom the Court does not have jurisdiction, in a matter unrelated to the present forum, and over which the Court does not have subject matter

jurisdiction. The relief sought would directly impinge upon the sovereignty of a foreign corporation, forcing the company to turn its assets over to LMH's hand-picked attorney, so that he may deal with those assets in a manner specifically contrary to those determined by Ideal to be in its best corporate interests. The allowance of such an injunction would violate all notions of due process. As such, the public interest is advanced by the denial of the Plaintiff's motion.

## CONCLUSION

For the reasons outlined hereinabove, Defendants Sergej Letyagin and Ideal Consult, Ltd. respectfully request that the Plaintiff's motion for injunctive relief be denied in its entirety.

Date:  December 12, 2011

Respectfully submitted,

/Mark Terry/
Mark Terry, B.C.S., FBN 506151
Office of Mark Terry, Esq.
801 Brickell Ave., Suite #900
Miami, FL 33131
786-443-7720 voice
786-513-0381 fax
mark@terryfirm.com

and

/s/Evan Fray-Witzer
Evan Fray-Witzer, *pro hac vice*
Ciampa Fray-Witzer, LLP
20 Park Plaza, Suite 804
Boston, MA 02116
(617) 723-5630
Evan@CFWLegal.com

/s/Valentin Gurvits
Valentin Gurvits, *pro hac vice*
Boston Law Group, PC
825 Beacon Street, Suite 20

Newton, MA 02459
 (617) 928-1804
vgurvits@bostonlawgroup.com

*Attorneys for Defendants*
*SERGEJ LETYAGIN, d/b/a*
*SUNPORNO.COM and IDEAL CONSULT,*
*LTD*

## CERTIFICATE OF SERVICE

I hereby certify that on Dec. 12, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either by transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner.

/Mark Terry/
Mark Terry, Esq.

## SERVICE LIST
## CASE NO. 0:11-CV-62107-KMW

Marc J. Randazza
mjr@randazza.com
Jason A. Fischer
jaf@randazza.com
2 S. Biscayne Blvd., Suite 2600
Miami, FL 33131
888-667-1113
fax: 305-437-7662