IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

LIBERTY MEDIA HOLDINGS, LLC

           Plaintiff,

vs.

SERGEJ LETYAGIN, d/b/a
SUNPORNO.COM, IDEAL CONSULT,
LTD., "ADVERT," "CASTA,"
"TRIKSTER," "WORKER," "LIKIS,"
"TESTER" and DOES 1-50

           Defendants.

CASE NO. 0:11-CV-62107-KMW

### AFFIDAVIT OF SERGEJ LETYAGIN

Sergey Letyagin, being duly sworn, does hereby depose and state:

1. My name is Sergej Letyagin. Unless otherwise stated, I make this affidavit of my own personal knowledge.

2. I am a full-time resident of Europe. I have never resided in (or visited) Florida. Indeed, I have never resided in or visited the United States.

3. Ideal Consult, Ltd. is a company headquartered in Seychelles. I am the Director of Technology for Ideal. In this role, I am responsible for (among other things) the registration of Ideal's websites.

4. I do not now (nor have I ever) owned sunporno.com individually.

5. Ideal owns and operates thousands of different websites, primarily offering adult entertainment.

6. Ideal does not maintain (and has never maintained) any servers within Florida, has no employees in (and has never had any in) Florida, does not advertise in (and has never advertised in) Florida, owns no real estate in (and has never owned any real estate in) Florida, pays no taxes in (and has never paid taxes in) Florida, and has no bank accounts in (and has

never had any bank accounts in) Florida. Neither Ideal nor Sunporno.com are registered to do business in Florida (nor have they ever been so registered).

7. Although I assume it goes without saying, *I* personally have no ties to Florida – I do not maintain any servers there, do not advertise there, do not own real estate there, do not pay taxes there, and have no bank accounts there.

8. Neither I, nor Ideal have been served with the Complaint in this case under the Hague Convention and I am unaware of service having been attempted under the Hague Convention with respect to either. *Id.*

9. In July of 2011, Ideal first obtained the already-existing website, SunPorno.com, along with a number of others.

10. In August of 2011, in reviewing business costs, Ideal decided that it could obtain domain registration and privacy services at a lower cost than it was receiving from Moniker (the registrar which had been selected by Sunporno.com's former owners). As a result, Ideal decided to experiment with another registrar, Evonames.

11. Evonames offered prices for registration and privacy services which would reduce Ideal's costs for these services by more than twenty percent. In addition, a number of friends had informed me that they used Evonames and that they were happy with the service provided.

12. Because Ideal's websites are its business, it was unwilling to transfer all of its domain names at once. Instead, Ideal decided it would first test Evonames with some of its less-trafficked websites.

13. On September 5, 2011, a full three weeks before this litigation was even filed, Ideal initiated the transfer of 117 of its domains away from Moniker. I cannot stress enough that this transfer had nothing to do with Liberty Media Holdings, its present claims, or any possible

litigation.

14. It was always intended that, if Ideal was happy with the results of this test, it would transfer in phases the remainder of its domain names to Evonames. Ideal also tested out other registrars, but was not happy with the results of those transfers.

15. On September 28, 2011, Ideal initiated the transfer of an additional 1,033 domain names away from Moniker. Again, at the time this transfer was made, Ideal was unaware that the present lawsuit had been filed. The transfers made had nothing to do with Liberty Media, its claims, or any possible litigation and everything to do with Ideal's desire to reduce its registration and privacy services costs.

16. Ideal first learned of the present lawsuit on September 29, 2011 when it was directed to a news report of the initiation of litigation.

17. I understand that the Plaintiff in this case placed a lock on the sunporno.com website, preventing us from transferring the domain to Ideal's preferred registrar. I did not learn of this lock until Ideal attempted to transfer the domain to another registrar as part of the mass transfers already underway.

18. Ideal's transfer of websites to new registrar have had no effect on Ideal's *ownership* of any domain name. Ideal continues to own today each domain which it owned at the initiation of the present litigation.

19. Ideal's websites do not accept credit cards, nor has Ideal set up any credit card

accounts with Visa, Mastercard, or American Express to accept such payments.

Signed under the pains and penalties of perjury this 12th day of December, 2011.

_____
Sergej Letagin, Director of Technology
Ideal Consult, Ltd.