IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

LIBERTY MEDIA HOLDINGS, LLC,

                        Plaintiff,

    vs.

SERGEJ LETYAGIN, d/b/a
SUNPORNO.COM, IDEAL CONSULT,
LTD., "ADVERT," "CASTA,"
"TRIKSTER," "WORKER," "LIKIS,"
"TESTER" and DOES 1-50,

                        Defendants.

CASE NO. 0:11-CV-62107-KMW

## OPPOSITION TO PLAINTIFF'S MOTION FOR RECONSIDERATION

Here we go again.

Late on Friday, December 9, 2011, the Plaintiff Liberty Media Holdings, LLC ("LMH") filed a so-called "emergency" motion seeking wildly inappropriate injunctive relief, including the appointment of a receiver to force the transfer of certain domain names and the freezing of defendants' funds. The purported basis for the "emergency" was the designation of a new registrar service provider for certain domain names by defendant Ideal Consult, Inc., despite the fact that these actions do not constitute a transfer of property and that LMH had been aware of such designation for more than two months before bringing its "emergency" motion. The result for the defendants was a very costly 72-hour, over-the-weekend scramble to oppose the motion.

At the hearing on the so-called emergency motion, however:

*Plaintiff withdrew nearly all of the relief sought in the motion - for instance, by conceding that five domain names not mentioned in the complaint could not be put into receivership, and acknowledging that there was insufficient evidence in the record to cull revenue obtained by Defendant through credit card processors.*

December 14, 2011 Order of the Court, p. 2.

Instead, LMH requested relief that it had not sought in its original motion, an injunction ordering Moniker to continue a "legal lock" placed on www.sunporno.com as a result of LMH's unsanctioned self-help.

On December 14, 2011, this Court issued a detailed, 11-page order denying LMH's motion, after finding that LMH had failed to carry its burden of proving a likelihood of success on the merits of its claims. *See* Order, p. 10. At 10 p.m. on December 14, 2011, LMH filed its emergency motion to reconsider.

## ARGUMENT

After properly noting that a motion for reconsideration is not an opportunity for a party to attempt to improve upon its arguments or vent frustration with the Court's reasoning (Motion for Reconsideration, p. 2.), the Plaintiff proceeds to do little more than attempt to improve upon its arguments and vent its frustration with the Court's reasoning. As Courts in this district have held, however, "it is an improper use of the motion to reconsider to ask the Court to rethink what the Court already thought through - rightly or wrongly." *American Contractors Insurance Co. Risk Retention Group v. Zurich American Insurance Co.*, 2011 WL 6101958 (S.D.Fla. 2011)(citations omitted). Because the Court properly held that LMH failed to meet its burden of proving a likelihood of success on the merits, the Motion for Reconsideration should be denied.[1]

LMH first complains that the Court overlooked evidence of infringement in concluding that LMH's evidence concerning infringement was weak. Ironically, though, half of the Plaintiff's argument demonstrates that the Plaintiff had made even *less* of a case concerning

---

[1] Having conclusively held that LMH failed to meet its burden at the first prong of the preliminary injunction analysis, the Court was not required to (and did not) proceed to examine the other prongs. Although the Court is *still* not required to consider the other prongs (as LMH has still not carried its burden on a likelihood of success on the merits), to the extent the Court decides to do so, the Defendants incorporate by reference the arguments made in their original opposition. For example, given the plaintiff's undenied two month lag in seeking injunctive relief – and the fact that any damages are readily compensable with money damages – the plaintiff cannot hope to meet its burden with respect to irreparable harm either.

infringement of *its* works than the Court might have been assumed – given that the Plaintiff's so-called expert was opining on works that he felt were infringing *generally* as opposed to works that infringed on LMH's intellectual property.

In any event, though, as the Defendants noted in their initial opposition, the lack of personal jurisdiction over either Ideal Consult or Mr. Letyagin is fatal to LMH's request for injunctive relief. In support of their motion to reconsider the jurisdictional issue, LMH first complains that the Court supposedly "overlooked" LMH's allegation that 15% of sunporno.com's website traffic comes from the United States. It is hard to understand how LMH can make such a claim, given that the Court specifically noted:

> *Plaintiff contends that Defendant has "considerable" web traffic originating from the United States and has presented an exhibit showing that fifteen percent of the visitors to its website are from the United States.*

Order, pp. 7-8.

LMH next attempts to confuse the Court by claiming that each *visitor* to the website is entering into a "transaction" with the person viewing the website. It is, to be generous, a *creative* use of the word "transaction." In actuality, Ideal Consult does not enter into financial transactions with its users in the United States – or anywhere else for that matter. *See Second Affidavit of Sergej Letyagin*, attached as Exhibit 1.

LMH next claims that the mere fact that sunporno.com is written in English is evidence that it is aimed at an American audience. This is absurd. As Mr. Letyagin states:

> *English is an international language. Liberty Media keeps saying that 15% of our traffic comes from the United States. Assuming that is true, does that mean that we have selected a language so as to exclude 85% of our users?*

LMH then focuses on the advertising that it asserts appears on the www.Sunporno.com website as evidence that the site targets an American audience. As both a factual and legal

matter, LMH is incorrect.[2]  As a factual matter, Ideal neither sells ads to be displayed on its website, nor has any control over the ads which are displayed.  *Second Affidavit of Sergej Letyagin*.  Instead, Ideal contracts with an advertising network company called ExoClick, which is headquartered in Spain.  *Id.*  While Ideal provides the space on its website for ExoClick, it is ExoClick that selects the advertisements that display when someone visits the website.  *Id.*  This is the way that most advertising on the internet works, a fact of which LMH is certainly aware.

Similarly, LMH's argument about the specific content in the advertisements (for example, LHM's amusing contention that such ads must be aimed at Americans because the penis enhancement ads mention inches, rather than centimeters), fails to disclose to the Court information that LMH – a sophisticated internet media company – certainly possesses.[3]  Like most advertising networks, ExoClick gears the ads that it displays to the location of the user.  Visitors in France are shown French ads and visitors in Germany are shown German ads.  *Id.*  Again, however, *none of this has anything to do with Ideal Consult*.  Ideal's only agreement is with the Spanish company, ExoClick.  *Id.*  As such, the content of these advertisements says nothing about Ideal Consult's contacts with the United States.

And, indeed, Courts within this Circuit have recognized as much:

Although Defendant AccuRadio concedes that some of AccuRadio's ad-serving vendors may display different commercial ads to different viewers of AccuRadio's site based on the viewer's location, we agree that these advertisements are not for AccuRadio's service and AccuRadio merely provides banner advertising spance on a website for unrelated products and services.

...If it were otherwise, all media outlets that feature advertisements may become subject to jurisdiction in any state regardless of whether they have actually directed their own business activities to the forum.

---

[2] Parenthetically, it is hard to understand how any of LMH's arguments are anything other than attempts to "improve its arguments" and rehash matters already fully considered by the Court.

[3] The argument is also one not articulated in Plaintiff's original motion.  As such, the Court need not entertain it at all.

*Zamora Radio, LLC v. Last.FM, Ltd.*, 2011 U.S. Dist. LEXIS 69101 (S.D. Fla. 2011)(numerous citations omitted). *See also Dynetech Corp. v. Leonard Fitness, Inc.*, 523 F. Supp. 2d 1344, 1347 (M.D. Fla. 2007) ("the fact that the website of a company that sells products in Florida can be reached via a link on Defendants' website is too narrow a thread on which to find a meaningful "contact" for the purposes of due process.")

Finally, the Plaintiff points to content on a site users are directed to if the click on a link to purchase a premium membership.[4] Preliminarily, the Sunporno site does not currently even offer the option to click to join a premium site. *Second Letyagin Affidavit.* Moreover, even when such an option was provided to users, the site to which the user was directed was an affiliate site, not owned or controlled by Sunporno. *Id.* Such affiliate arrangements are commonplace within the adult entertainment website industry. *Id.* Whatever content may or may not have been displayed on these affiliate sites was not controlled by Ideal Consult and, as such, is irrelevant.

## CONCLUSION

Within the span of one week, Liberty Media has brought two "emergency" motions, each of which lacked a good faith factual or legal basis.[5] These motions have unnecessarily increased the defendants' costs and wasted this Court's precious resources. For the reasons outlined hereinabove, Defendants Ideal Consult and Mr. Letyagin respectfully request that the Court deny

---

[4] Again, this argument was not articulated in Plaintiff's original motion and need not be entertained now.
[5] The fact that LMH withdrew all of the requests for relief actually requested in their first motion at oral argument is, perhaps, the strongest indicator that LMH knew well that its motion was frivolous.

Plaintiff's Motion to Reconsider and award them their reasonable costs and attorney's fees necessitated by the response to Plaintiff's filing of its unnecessary motions.

Date:  December 16, 2011

          Respectfully submitted,

          /Mark Terry/
          Mark Terry, B.C.S., FBN 506151
          Office of Mark Terry, Esq.
          801 Brickell Ave., Suite #900
          Miami, FL 33131
          786-443-7720 voice
          786-513-0381 fax
          mark@terryfirm.com

          and

          /s/Evan Fray-Witzer
          Evan Fray-Witzer, *pro hac vice*
          Ciampa Fray-Witzer, LLP
          20 Park Plaza, Suite 804
          Boston, MA 02116
          (617) 723-5630
          Evan@CFWLegal.com

          /s/Valentin Gurvits
          Valentin Gurvits, *pro hac vice*
          Boston Law Group, PC
          825 Beacon Street, Suite 20
          Newton, MA 02459
           (617) 928-1804
          vgurvits@bostonlawgroup.com

          *Attorneys for Defendants*
          *SERGEJ LETYAGIN, d/b/a*
          *SUNPORNO.COM and IDEAL CONSULT,*
          *LTD*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on Dec. 16, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either by transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner.

      /Mark Terry/
      Mark Terry, Esq.

## **SERVICE LIST**
### **CASE NO. 0:11-CV-62107-KMW**

Marc J. Randazza
mjr@randazza.com
Jason A. Fischer
jaf@randazza.com
2 S. Biscayne Blvd., Suite 2600
Miami, FL 33131
888-667-1113
fax: 305-437-7662